IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CEDRIC JENNINGS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | **Case No. 3:09-00292** |
| v. ) | **Judge Nixon** |
| ) | **Magistrate Judge Bryant** |
| PROLABOR SERVICES, INC, ) | |
| ) | |
|     Defendant. ) | |

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment and supporting documents ("Defendant's Motion") (Doc. Nos. 45-51), to which Plaintiff has filed a Response with supporting documents (Doc. Nos. 66, 67). Also pending is Defendant's Motion for Reconsideration of Order (Doc. No. 62), Motion for Leave to File Reply re: Motion for Reconsideration of Order (Doc. No. 65), and Motion for Leave to File Reply to Plaintiff's Response to the Motion for Summary Judgment (Doc. No. 75).

For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**, Defendant's Motion for Reconsideration of Order is **DENIED**, and Defendant's motions for leave to file replies are **GRANTED**.

## I. BACKGROUND

### A. Factual Background[1]

Cedric Jennings ("Plaintiff"), an African-American male, was hired by Pro Labor Services ("Defendant") on or about March 15, 2008 to load and unload trucks at the Aldi distribution center in Mt. Juliet, Tennessee, as well as to perform duties including cleaning up spills and moving pallets. Pro Labor employed approximately fifteen individuals at the Aldi location throughout the course of Plaintiff's employment, and Plaintiff was the only African American employed. (Doc. No. 66, at 2.)

In July 2008, Pro Labor's customer, Aldi Inc., insisted that Pro Labor's employees conform with the previously loosely-enforced policy of wearing the company uniform for identification purposes. Around that time, Zachary Pierce, Jennings's supervisor, provided Jennings with two Pro Labor shirts to wear. Plaintiff alleges that the shirts he was given "looked like they had been cleaned up with jelly," and one was torn, and admits to throwing the shirts in the garbage upon receiving them. Until August 1, 2008, Plaintiff made no complaint about the condition of the shirts.

On August 1, 2008, Plaintiff came to work without wearing a Pro Labor shirt. That day, Pierce instructed Jennings to put on a Pro Labor shirt, but Jennings refused to do so, and the disagreement elevated to the point where Jennings was "using a tone of voice that was elevated," and he was escorted off the premises—Plaintiff claims he was told never to come back, while Defendant states that he was instructed to wear a Pro Labor shirt if he wanted to return to work.

---

[1] Unless otherwise noted, the facts outlined in this section are undisputed and taken from Parties' statements of undisputed facts (Doc. Nos. 50, 67.)

-2-

Case 3:09-cv-00292 Document 77 Filed 08/20/10 Page 2 of 15 PageID #: 942

Plaintiff alleges that on that day, several non-African-American employees were permitted to continue working, even though they, too, did not wear Pro Labor shirts. (*Id.*) Defendant states that a month after Jennings's termination, Ryan Moore, a white employee, was also sent home for failing to wear a Pro Labor shirt. After August 1, Jennings did not return to work.

### B. Procedural Background

On or around August 4, 2008, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, alleging that Defendant had discriminated against him on the basis of race. (Doc. No. 1, at 2.) Plaintiff filed the instant Complaint on March 25, 2009 under 42 U.S.C. § 1981, Title VII, 42. U.S.C. §§ 2000e, *et seq.*, and the Tennessee Human Rights Act.

On May 3, 2010, Defendant submitted a Motion for Summary Judgment with supporting documents (Doc. Nos. 46-52). On June 14, Plaintiff filed a Motion for Extension of Time to File Response/Reply (Doc. No. 53). Plaintiff's counsel explained that "[f]or some unknown reason, the deadline for responding was never calendared in Plaintiff's counsel's calendaring system and the motion was inadvertently deleted from the 'CM/ECF Notices' folder in counsel's Microsoft Outlook mailbox." (Doc. No. 54, at 1.) Plaintiff's counsel stated that "[t]his is the first and only time in over 14 years of practice that counsel has ever failed to calendar a deadline for responding to a motion for summary judgment." (*Id.* at 2.) On June 21, without noticing that Plaintiff had filed a motion for extension of time, this Court summarily granted Defendant's Motion because Plaintiff had not filed a reply. On July 19, Plaintiff filed a Motion to Alter Judgment, and having realized Plaintiff's Motion for Extension of Time, this Court granted

-3-

Case 3:09-cv-00292 Document 77 Filed 08/20/10 Page 3 of 15 PageID #: 943

Plaintiff's Motion on July 23, vacating the summary judgment order (Doc. No. 60). On July 29, Defendant filed a Motion for Reconsideration of Order, still pending (Doc. No. 62). On August 2, 2010, Plaintiff filed a Response to Defendant's Motion for Summary Judgment (Doc. No. 66).

## II.   DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER

Defendant moves pursuant to Federal Rule of Civil Procedure 1 and LR 7.01(b) to reconsider the Order entered July 23, 2010 (Doc. No. 60) and to enter summary judgment in favor of Defendant. (Doc. No. 62.) Plaintiff has responded (Doc. No. 64), and Defendant has motioned for leave to file a reply (Doc. No. 65). Defendant's Motion for Leave to File Reply is hereby **GRANTED**, and Defendant's Motion for Reconsideration (Doc. No. 62) is **DENIED**.

Defendant states that summary judgment was properly granted, and that prejudice will result should the summary judgment not be granted at this time based on the fact that the Motion to Dismiss (Doc. No. 8) has been pending in this matter since June 8, 2009. (Doc. No. 62, at 1.)

On July 23, this Court vacated its previous order granting summary judgment for Defendant, in part, because while delay was within the reasonable control of the moving party, it appears that the late filing party acted in good faith. (Doc. No. 60.) Furthermore, the Court found that Defendant was vague in detailing what prejudice will be experienced. (*Id.*)

In Defendant's current Motion to Reconsider, Defendant more explicitly lays out the prejudice it will experience as a result of the Court's July 23, 2010 Order. In particular, Defendant states that because this motion is pending, the time for Defendant to file an answer with defenses, counter-claims and/or third party claims pursuant to Federal Rules of Civil Procedure 12-14 has not ripened. (Doc. No. 62, at 1.) Defendant states that it should not be

-4-

required to proceed to trial, set for August 31, 2010, when Defendant has not yet asserted any and all defenses, counter-claims and/or third party claims. (*Id.*) Defendant states that it has scrupulously followed the scheduling order in effect in this matter so as to be free of this frivolous, expensive, and disruptive claim as expeditiously as possible under the law. (*Id.*)

Having considered Defendant's motion, the Court declines to vacate its July 23 Order. The late filing party appears to have acted in good faith, and the interests of justice are furthered by ruling on the merits of Plaintiff's employment discrimination claim, rather than dismissing the case as a result of human error.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

Mere allegations of a factual dispute between the parties are not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-

-5-

Case 3:09-cv-00292   Document 77   Filed 08/20/10   Page 5 of 15 PageID #: 945

moving party. *Id.* at 247-48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.* at 248.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, the non-movant may not rely solely on conclusory allegations, but rather must come forward with affirmative evidence which establishes its claims and raises an issue of genuine material fact. *Id.* at 324. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. 477 U.S. at 249-50 (citations omitted). It is true, however, that in ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson*, 477 U.S. at 250. The court must determine whether a reasonable jury would be able to return a verdict for the non-moving party and if so, the Court must deny summary judgment. *Id.* at 249. Thus, "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

**B.     Analysis**

Under Plaintiff's disparate treatment claim, Defendant moves for summary judgment on the grounds that Plaintiff has presented no direct evidence of race discrimination, and cannot establish a prima facie case of discrimination. (Doc. No. 51, at 3.) In support of the latter assertion, Defendant states that: (a) Plaintiff has failed to establish an adverse employment action (*Id.* at 4); (b) Plaintiff has failed to establish that he was treated differently than other similarly situated employees (*Id.* at 6); (c) Plaintiff has failed to show that Defendant's proffered reasons for its behavior towards Plaintiff was pretext (*Id.* at 7).

Defendant also submits that Plaintiff's allegations do not support a hostile work environment claim. (*Id.* at 7-10.) Finally, Defendant states that Plaintiff's spoliation of evidence entitles Defendant to sanctions up to and including dismissal, and Plaintiff's claims should be dismissed due to an unavailability of remedy. (*Id.* at 10-13.)

As a preliminary matter, Plaintiff concedes that the evidence does not support a claim of hostile work environment. For this reason, Defendant's motion summary judgment on these grounds is hereby **GRANTED.** This Court will address the remaining charges in turn.

*1.     Disparate Treatment*

Title VII and the THRA share a common purpose, and the requirements necessary to prevail on claims of discrimination under these statutes are virtually identical. *See Newman v. Fed. Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001) (comparing THRA and federal anti-

-7-

Case 3:09-cv-00292   Document 77   Filed 08/20/10   Page 7 of 15 PageID #: 947

discrimination statutes). The Court will therefore evaluate Plaintiff's THRA and Title VII claims together.

In order to establish his claim of race discrimination under Title VII, a plaintiff must either provide direct evidence of intentional discrimination by the defendant, or introduce circumstantial evidence that would support an inference of discrimination. *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 16 (6th Cir. 2007). Direct evidence is evidence that if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal quotations omitted). In the absence of direct evidence, the plaintiff must present circumstantial evidence through the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973); *see also Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 593 (6th Cir. 2007). Defendant states that Plaintiff has presented no direct evidence of race discrimination (Doc. No. 51, at 3-4), and Plaintiff does not disagree. For this reason, Plaintiff must present circumstantial evidence through the burden-shifting paradigm.

Under the burden-shifting analysis, a plaintiff bears the initial burden to establish a prima facie case. To do so, the plaintiff must present evidence on all of the following elements: (1) he is a member of the protected class; (2) he was otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) he was otherwise treated less favorably than a similarly situated employee outside of his protected class. *McDonald Douglas Corp.*, 411 U.S. at 802. By proving these elements, the plaintiff establishes "a rebuttable presumption of

discrimination, and the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). If the defendant is successful in establishing a legitimate, nondiscriminatory reason for the adverse action, then the burden shifts back to the plaintiff to prove that the proffered reasons were actually a pretext to hide unlawful discrimination. *Id.*

### a) Adverse Employment Action

Defendant states that Plaintiff has failed to establish an adverse employment action. (Doc. No. 51, at 4.) In support of this argument, Defendant explains that Jennings was not fired, and that Jennings was told he could return to work if he wore a Pro Labor shirt. (*Id.*) Defendant states that the requirement to wear a Pro Labor shirt was not an adverse employment action, and for this reason, Defendant is entitled to summary judgment. In response, Plaintiff states that he was terminated on August 1, 2008 by his supervisor Zack Pierce. (Doc. No. 66, at 11.) On that day, Plaintiff alleges he was ordered to "clock out and don't come back." (*Id.* at 4.)

Parties dispute whether Jennings was fired on August 1 for not wearing a Pro Labor shirt, or whether he was merely told not to come back until he wore one—this is a genuine issue of material fact. It is well-established and undisputed here that the termination of employment qualifies as an adverse employment action. *See*, *e.g.*, *Bowman v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000) ("[a] materially adverse change might be indicated by a termination of employment"). Thus, if Plaintiff's iteration of the facts is correct, it is clear that Jennings was subject to an adverse employment action. If Defendant is correct, Defendant may

-9-

not have imposed an adverse employment action against Jennings. For this reason, Defendant's motion for summary judgment on these grounds is not proper at this juncture.

### b) *Similarly Situated Employees*

Defendant also moves for summary judgment on the grounds that Plaintiff has failed to establish a genuine issue of material fact as to whether he was treated differently than other similarly situated employees. (Doc. No. 51, at 6.) "To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar in all of the *relevant* aspects." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (citations omitted) (italics in original).

Plaintiff alleges a number of situations in which he was treated differently than other similarly situated employees who were not African American. Importantly, Plaintiff states that he was the only employee sent home on August 1, 2008 for not wearing a Pro Labor shirt, while all other employees, none of whom were African-American, were permitted to remain at work. (Doc. No. 66, at 13.) Plaintiff describes at least three white men who did not wear Pro Labor shirts were not sent home that day. While he is not able to identify two of them by name,[2] he names at least one employee, Duane Wagner, a white male, who did not wear a Pro Labor shirt that day. Plaintiff has also submitted six photographs allegedly taken by Duane Wagner on the day Jennings ceased employment at Pro Labor, which supposedly depict several Pro Labor employees without Pro Labor shirts. (*Id.*, Att. 1, at 36-41.)

---

[2] Plaintiff describes them instead as "a tall stocky guy, a White male," and the other as "a short, balding guy who always wore a baseball cap. Also a White male." (Doc. No. 66, at 4.)

-10-

The Court finds that Plaintiff's allegations raise a genuine issue of material fact as to whether Jennings was treated differently than other similarly situated employees. For this reason, Defendant's motion for summary judgment on these grounds cannot be granted.

    *c)*  *Pretext*

Defendant also moves for summary judgment on the ground that Plaintiff has failed to show that Defendant's proffered reasons for its behavior towards Plaintiff was pretext. (Doc. No. 51, at 7.) "A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation marks and citations omitted).

Defendant's proffered legitimate, nondiscriminatory reason for the challenged employment action is as follows: Shortly before August 1, 2008, Aldi, Inc., Defendant's client, insisted upon compliance with the requirement that Pro Labor employees wear Pro Labor shirts. (Doc. No. 51, at 7.) Jennings concedes he threw his shirts away. (*Id.*) Furthermore, Defendant states that Jennings never told anyone at Pro Labor that anything was wrong with the two shirts he was issued. (*Id.*) Moreover, Defendant states that if Jennings needed other shirts, he would have received them from the new order placed on August 1, 2008. (*Id.*) Finally, Defendant

maintains throughout that Plaintiff was sent home, not fired, on August 1, and that he was eventually terminated for not showing up for work for three days.

Plaintiff responds that such a reason is pretext, alleging the following facts in support of his argument:

> Plaintiff was the *only* employee that was sent home on August 1, 2008 for not wearing a Pro Labor shirt, that other White employees continued to work, even six months later, without wearing Prolabor [sic] shirts, that no new shirts were available to wear on August 1, 2008, and that Plaintiff was the only one required to wear torn and dirty, used shirts.

(Doc. No. 66, at 13 (emphasis in original).)

Only under the most limited of circumstances should a complaint be dismissed on summary judgment where there is a factual basis to argue that the employer's articulated reason was pretext. 1-2 Janice Goodman, et al., *Employee Rights Litigation: Pleading and Practice* § 2.05 (2009) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)). This Court is of the opinion that Plaintiff has presented sufficient evidence to enable a reasonable jury to conclude that Jennings would not have been discharged but for his race. The ultimate decision of whether Pro Labor's proffered reason for discharging Jennings was legitimate or only a pretext intended to hide racial discrimination is a matter for the jury to determine. Based upon the record before the Court, this Court finds that the issue cannot be decided as a matter of law.

For these reasons, Defendant's Motion for Summary Judgment on the issue of race discrimination is hereby **DENIED.**

### 2. *Spoliation of Evidence*

It is undisputed that at some point during Jennings's employment, Defendant gave Jennings two Pro Labor shirts to wear at work, and he threw them out. (*See* Doc. No. 51, at 1.)

-12-

Defendant asserts that Jennings's behavior constitutes the spoliation of crucial evidence, and moves the Court to dismiss the case on this ground. (*Id.* at 11.) Defendant cites several cases in support of its motion, primarily relying on *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041 (W.D. Tenn. 2009). This Court finds Defendant's motion improper, as Jennings's behavior does not constitute spoliation of evidence. As the *BancorpSouth Bank* court stated, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in *pending or reasonably foreseeable litigation*." 643 F. Supp. 2d 1041, 1059 n.6 (emphasis added). At the time Jennings threw out the Pro Labor shirts, litigation was not yet pending, nor is there anything to suggest in the facts of this case that litigation was reasonably foreseeable. Even if Jennings's behavior did constitute the spoliation of evidence, the Court would be unwilling to impose the extreme sanction of a directed verdict in favor of Defendant. The *BankcourpSouth* court described the standard for evaluation of spoliation of evidence as follows:

> A grant of judgment in favor of a prejudiced party is appropriate only if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party and, as it is a drastic remedy, should be imposed only in extreme circumstances. "Bad faith" for these purposes means destruction for the purpose of hiding adverse information. "Fault" in this context suggests objectively unreasonable behavior. In determining whether the extreme sanction is warranted, a court should consider (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*BancorpSouth Bank*, 643 F. Supp. 2d at 1060 (internal quotation marks and citations omitted). Defendant has not asserted any facts indicating that Jennings acted in bad faith in this matter, and while perhaps it was unreasonable to throw out the shirts provided to him by his employer, it is

not an extreme enough measure to warrant sanction. Defendant's motion for dismissal on these grounds is hereby **DENIED**.

### 3. *Unavailability of Remedy*

Once a court finds that an employer has engaged in an unlawful employment practice, Section 706(g) of Title VII empowers the court to enjoin the defendant from engaging in such practices and to order affirmative relief where appropriate. 42 U.S.C. § 2000e-5(g). In addition to injunctive and affirmative relief, the prevailing plaintiff may be entitled to compensatory and punitive damages, lost pay and benefits, attorney's fees and in appropriate cases, front pay or reinstatement in the lost position. 42 U.S.C. § 2000e.

Defendant requests that the Court dismiss the claim because it is impossible to fashion a remedy. (Doc. No. 51, at 13.) In support of this request, Defendant states that back pay would be inappropriate here, as Plaintiff found work shortly after he left Pro Labor, and he has refused to disclose his employers since departing from Pro Labor. (*Id.*) Furthermore, reinstatement is not an option, as Plaintiff testified that he would not return to his job at Pro Labor. (*Id.* at 14.)

The question of damages is generally a question of fact, to be determined by a jury. The Court finds that Defendant has not met its burden of establishing that there is no genuine issue of material fact in determining whether a remedy is available in this case, should liability be found. Defendant's motion for summary judgment on these grounds is hereby **DENIED.**

## IV. CONCLUSION

The Court finds that a genuine issue of material fact exists regarding Plaintiff's claims for employment discrimination. For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**, Defendant's Motion for Reconsideration of Order is **DENIED**, and Defendant's motions for leave to file replies are **GRANTED**.

The Pretrial Conference is hereby scheduled for  December 17 , 2010 at 10:00  a.m., and the Trial is scheduled for  January 11, 2011  at 9:00  a.m.

It is so ORDERED.

Entered this the ___19th____ day of August, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT